IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 09-cv-00973-WYD-MEH

TI TRAINING CORP., a Delaware corporation; and
GREG OTTE, an individual,

    Plaintiffs,

v.

FAAC, INCORPORATED, d/b/a IES INTERACTIVE TRAINING, a Michigan corporation,

    Defendant.

---

**ORDER**

---

I.    <u>INTRODUCTION</u>

THIS MATTER is before the Court on Plaintiffs' Motion to Dismiss FAAC, Inc.'s Counterclaims for Copyright Infringement and False Designation of Origin. Plaintiffs move to dismiss these counterclaims pursuant to Fed. R. Civ. P. 12(b)(1) and (6). They argue that the copyright infringement counterclaim against Ti Training should be dismissed because FAAC, Incorporated, d/b/a IES Interactive Training ("IES") fails to plead facts sufficient to establish copyright registration and the Court lacks subject matter jurisdiction over this counterclaim. Plaintiffs move to dismiss the false designation of origin counterclaim against Ti Training because IES has not alleged that Ti Training relabeled or rebranded a product actually produced by IES, as is required to state a claim.

A response in opposition to the motion was filed on September 3, 2009. IES argues that Plaintiffs' motion does not meet the requirements for a Rule 12(b) dismissal

and that Plaintiffs' arguments in support of the Motion to Dismiss fail as a matter of law. A reply was filed on September 17, 2009. For the reasons stated below, the motion to dismiss is granted.

II.   ANALYSIS

   A.   Standard of Review

A motion to dismiss under Rule 12(b)(1) can be either a facial attack on the sufficiency of the allegations of the complaint as to subject matter jurisdiction or a challenge to the actual facts upon which subject matter jurisdiction is based. *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002). In this case, Plaintiffs are raising a facial attack to the sufficiency of the allegations as to the copyright infringement claim.

The Federal Rules of Civil Procedure also provide that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted). "A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." *Id*. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 1950.

B. <u>Whether Dismissal is Appropriate of the Counterclaims</u>

1. <u>The Copyright Infringement Counterclaim</u>

Plaintiffs assert that the Court does not have subject matter jurisdiction over the copyright infringement claim because IES failed to plead facts sufficient to establish such a claim; namely, that the copyright has been registered. I note that as courts of limited jurisdiction, federal courts may only adjudicate cases that the Constitution and Congress have granted them authority to hear. *Todd Holding Co., Inc. v. Super Valu Stores, Inc.*, 744 F. Supp. 1025, 1026 (D. Colo. 1990). Thus, I must satisfy myself of subject matter jurisdiction in this Court before proceeding to the merits of a claim. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 95 (1998). "[T]he burden is on the party claiming jurisdiction to show it by a preponderance of the evidence." *Celli v. Shoell*, 40 F.3d 324, 327 (10th Cir.1994). "Mere conclusory allegations of jurisdiction are not enough; the party pleading jurisdiction 'must allege in his pleading the facts essential to show jurisdiction'" *Id* (quotation omitted).

I agree with Plaintiffs that the Copyright Act specifically limits a federal court's subject matter jurisdiction to claims arising from registered copyrights. In other words, registration of the copyright is a jurisdictional prerequisite to a copyright action. *See* 17 U.S.C. § 411(a) ("no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title"); *see also La Resolana Architects, P.A. v. Clay Realtors Angel Fire, Inc.*, 416 F.3d 1195, 1200-01 (10th Cir. 2005).

IES does not dispute the copyright at issue is not registered.  IES also does not dispute that registration is a prerequisite to subject matter jurisdiction over this claim.  Instead, it argues only that the Court can exercise supplemental jurisdiction over the copyright infringement claim pursuant to 28 U.S.C. § 1367.  Specifically, IES asserts that the Court has original jurisdiction over the initial claims brought by Plaintiffs and the other counterclaims brought by IES and that the Court can exercise supplemental jurisdiction over the copyright infringement claim because it forms part of the same case or controversy.  28 U.S.C. § 1367.  IES asserts that the copyright infringement claim arises from the same set of facts as all of the other claims at issue.  Finally, it is argued on this issue that dismissal of this counterclaim with a requirement that it be brought months later from now after the copyright is registered would promote judicial inefficiency.

I reject IES's arguments.  Copyright infringement is a claim over which federal courts have original jurisdiction.  *See* 17 U.S.C. § 301(a).  As such, there are strict requirements for the Court to exercise subject matter jurisdiction.  It is undisputed in this case that the requirements for a copyright infringement counterclaim have not been satisfied as there is no allegation that the copyright is registered.  Accordingly, this Court does not have subject matter jurisdiction over the counterclaim and it must be dismissed.  *See Jennette v. United States*, 77 Fed. Cl. 126, 132 (Fed. Cl. 2007) (dismissing copyright infringement claim where plaintiff "proffered no evidence of copyright registration nor the denial of copyright registration; plaintiff has not even asserted that he sought copyright registration in his Complaint . . . ."); *Derminer v. Kramer*, 386 F. Supp. 2d 905, 911 (E.D. Mich. 2005) (finding that, where "Plaintiffs fail

to specifically allege registration, and . . .provide this Court with neither a registration certificate nor a completed application dated before the Complaint was filed . . . [the court has] no subject matter jurisdiction over those copyright claims"); *Tuff-n-Rumble Mgt., Inc. v. Sugarhill Music Pub., Inc.*, 49 F. Supp. 2d 673, 677 (S.D.N.Y. 1999) ("district courts are without subject matter jurisdiction to hear claims for federal copyright infringement unless a party asserts in his pleadings that he has received an actual certificate of registration or its denial from the Copyright Office.").

IES attempts to circumvent the jurisdictional requirements for bringing the copyright infringement counterclaim by arguing that the Court can exercise supplemental jurisdiction over the counterclaim. This argument is plainly without merit. The statute makes clear that supplemental jurisdiction applies to claims *other* than those that the Court has original jurisdiction of. Thus, it does not apply to federal claims that fail to meet the jurisdictional requirements for suit in this Court. Finally, judicial economy or efficiency is simply not an appropriate issue for consideration since subject matter jurisdiction over the counterclaim is lacking.

### 2. False Designation of Origin Counterclaim

Plaintiffs argue that this counterclaim fails to state a claim upon which relief can be granted because IES has not alleged that Ti Training essentially relabeled or rebranded a product actually produced by IES as is required to state a claim. Plaintiffs argue in this regard that in order to face liability under the Lanham Act for false designation of origin, a person must claim as his own goods produced by another; it is not enough that a person claims another's idea as its own.

IES argues in response that its allegations state a claim for false designation of origin because, among other things, the counterclaim alleges that Ti Training has falsely represented itself to the public and IES's customers as the creator and producer of IES's goods and products, including a computer program created by IES and scenarios used in connection with that program that were created, filmed and produced by IES. IES argues that it is precisely this type of conduct that gives rise to a claim for false designation of origin.

Turning to my analysis, section 43(a)(1)(A) of the Lanham Act provides:

> Any person who, on, or in connection with any goods or services ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or *any false designation of origin*, false or misleading description of fact, or false or misleading representation of fact, which-is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, ... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A) (emphasis added).

The Supreme Court in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 32, 39 (2003) clarified what type of actions create a claim for false designation of origin. In that case, respondents alleged that Dastar made a video set which was copied substantially from tapes of an original version of a Crusade television series which Fox had the exclusive right to distribute on video. The Crusade series was not copyrighted and was thus in the public domain. *Id.* 25-27. Dastar renamed the video set and did not give credit to the original Crusade television series it copied. *Id.* The respondents argued that this constituted "reverse passing off" in violation of § 43(a) of

the Lanham Act. *Id.* at 27.[1]  The Supreme Court disagreed, stating that the "claim would undoubtedly be sustained if Dastar had bought some of New Line's Crusade videotapes and merely repackaged them as its own." *Id.* at 31.  It further stated that § 43(a) of the Lanham Act forbids, "for example,  the Coca-Cola Company's passing off its product as Pepsi-Cola or reverse passing off Pepsi-Cola as its product." *Id.* at 39. However, in that case Dastar "took a creative work in the public domain – the Crusade series – copied it, made modifications (arguably minor), and produced its own series of videotapes." *Id.*  The Supreme Court held that this did not constitute a claim for false designation of origin. *Id.* at 37-39.

In so holding, the Court noted that "[i]If 'origin' refers only to the manufacturer or producer of the physical 'goods' that are made available to the public (in this case the videotapes), Dastar was the origin." *Id.*  "If, however, 'origin' includes the creator of the underlying work that Dastar copied, then someone else (perhaps Fox) was the origin of Dastar's product." *Id.*  The Court was thus called upon to decide what § 43(a)(1)(A) means by the "origin" of "goods." *Id.*  It concluded that the phrase "origin of goods" in the Lanham Act "refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." *Id.* at 37.  "To hold otherwise would be akin to finding that § 43(a) created a species of perpetual patent and copyright, which Congress may not do." *Id.*  It further pointed out that the Lanham Act "does not exist to reward manufacturers for their innovation in

---

[1] "Reverse passing off" has been defined as "removing or obliterating the original trademark without authorization before reselling good produced by someone else."  *Shaw v. Lindheim*, 919 F.2d 1353, 1364 (9th Cir. 1990) (citing *Smith v. Montoro*, 648 F.2d 602, 605 (9th Cir. 1981)).

creating a particular device", and that such protection comes from other areas of law, such as copyright law. *Id.* at 34, 37-38. Thus, it concluded that Dastar was the "origin" of the products it sold as its own, and that respondents could not prevail on their Lanham Act claim. *Id.*

The Fifth Circuit's opinion in *General Universal Systems, Inc. v. Lee*, 379 F.3d 131 (5th Cir. 2004), provides further guidance. In that case, the plaintiff asserted a Lanham Act claim and other claims in connection with the alleged unauthorized copy of its software program and creation of a competing program based on that software without compensation. *Id.* at 137-38. The court dismissed the Lanham Act claim, stating:

> GUS has not accused HAL of taking tangible copies of its software, removing its trademarks, and selling them as its own. Rather, GUS asserts that HAL copied the ideas, concepts, structures, and sequences embodied in its copyrighted work. In sum and substance, GUS's claim is simply a claim that HAL has infringed its copyright. . . . Dastar makes clear that such claims are not actionable under § 43(a).

Id. at 149; *see also Baden Sports, Inc. v. Molten USA, Inc.*, 556 F.3d 1300, 1306 (Fed Cir. 2009) ("Baden has not argued that someone other than Molten produces the infringing basketballs, and nothing in the record indicates that Molten is not in fact the producer of the balls. Thus, Baden's claims are not actionable under section 43(a)(1)(A)"); *Shaw v. Lindheim*, 919 F.2d 1353, 1364 (9th Cir. 1990) (rejecting argument that false designation of origin claim applies to instances in which has defendant has copied a product and committed 'reverse passing off' by selling it under his own label, as such claims are generally limited to "situations of bodily appropriation", *i.e.*, removing or obliterating the original trademark without authorization before reselling

goods produced by someone else); *Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1116-17 (W.D. Wash. 2004) (rejecting reverse passing off claim that Amazon displayed plaintiff's photographic images without crediting plaintiff because plaintiff's claim was basically a copyright claim).

I now turn to IES's allegations to determine if they plausibly state a claim for false designation of origin under the Lanham Act. IES alleges in its counterclaim that "Ti Training its agents and employees have copied the MILO product's computer configuration and appearance so as to make their Training Lab product appear similar or identical to the MILO simulator system, have held themselves out to be the developers of the MILO simulator system, and have marketed the system using non-original scenarios copied from IES which they have claimed as their own work." (Answer to Am. Compl. and Countercls. Of FAAC, Inc. ["Countercls."], Count IV, ¶ 80). It further alleges that Ti Training's "sale, advertising and promotion of [its] Training Lab product constitutes a false designation of origin . . . , since the sale of said product, with a confusingly similar overall look, creates a likelihood that consumers will be confused into thinking that the Training Lab product is either sold by, sponsored by, approved by, or affiliated with IES." (*Id.* ¶ 81).

IES also alleges that Ti Training: "has been offering a series of products to IES's . . . customers that infringe IES's intellectual property rights"; has "knowingly and willfully been misinforming the public. . . that Ti Training is really IES"; offers "a product that has been copied to have the look and feel of the IES product"; has "created a competing program, using a virtually identical user interface and scenarios developed and filmed based on the IES scenarios"; has misled consumers "to believe the products are IES's

products"; has "copied the user interface from [IES'] product" to cause the "product to appear nearly identical to . . . IES's MILO simulator system"; "has held itself out to be the developer of the MILO simulator system"; is "wrongfully using . . . misappropriated information to create new scenarios" which are "intentionally created to be interactive/ compatible with the MILO product"; has produced a user manual for its product "that is a virtual copy of the IES user guide with only the name of the product replaced"; and has approached customers of IES using misappropriated knowledge "in an effort to capitalize on IES's goodwill and divert IES customers to Ti Training". (*See, e.g.*, Countercls., ¶¶ 1, 15-29.) IES concludes, "[c]oupled with the fact that Ti Training has made its product look identical to that of IES and is marketing to IES old customers using the IES customer database, it is clear that consumers would be confused as to the source of the product." (*Id.*, ¶ 30.)

Even construing the allegations in the light most favorable to IES, I find that the allegations do not plausibly state a claim under the Lanham Act for false designation of origin. The essence of the Counterclaim is that Ti Training copied IES's products, developed a competing product that it produces in the marketplace, did not give IES credit for the use of IES's technology in the competing product, and misrepresents that the technology was created by Ti Training instead of IES. This does not state a claim. While IES may have been the author of the ideas or concepts embodied in Ti Training's products, the counterclaim clearly alleges that Ti Training, not IES, was the producer of the competing product. *See Dastar*, 539 U.S. at 37.

As discussed in *General Universal Systems*, IES has not accused Ti Training of taking tangible copies of its products, removing its trademarks, name or brand, and

selling them as its own. *Id.*, 379 F.3d at 149. Rather, IES asserts that Ti Training copied the ideas, concepts, structures, and sequences embodied in its work. This is not sufficient to state a claim under § 43(a)(1)(A) of the Lanham Act. *Id.* Accordingly, I find that the motion to dismiss must also be granted as to the false designation of origin counterclaim.

III. <u>CONCLUSION</u>

Based upon the foregoing, it is

ORDERED that Plaintiff's Motion to Dismiss Motion to Dismiss FAAC, Inc.'s Counterclaims for Copyright Infringement and False Designation of Origin [doc. # 28] is **GRANTED**. The Third and Sixth Counterclaims asserted by FAAC, Incorporated d/b/a IES Interactive Training for Copyright Infringement and False Designation of Origin are **DISMISSED**.

Dated: March 20, 2010

            BY THE COURT:

            s/ Wiley Y. Daniel
            Wiley Y. Daniel
            Chief United States District Judge